UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

_____
                              )
LINETTE MONK, MOTHER AND NEXT )
FRIEND OF MINOR D.M.,         )
                              )
          Plaintiff,          )
                              )
     v.                       ) Civil Action No. 15-1574 (EGS)
                              )
DISTRICT OF COLUMBIA, *et al.*, )
                              )
          Defendants.         )
_____)

## MEMORANDUM OPINION

Linette Monk brings this action on behalf of her minor son D.M. against the District of Columbia ("the District"), the District of Columbia Office of the Attorney General, and unnamed employees of the District of Columbia Department of Youth Rehabilitation Services ("DYRS") and of the Youth Services Center ("YSC") alleging assault and battery, intentional infliction of emotional distress, and two claims—excessive force and an unreasonable seizure—under 42 U.S.C. § 1983. Ms. Monk makes two additional claims—negligent supervision and negligent training—exclusively against the District. Before the Court is the District's partial motion to dismiss both § 1983 claims and the negligent training and supervision claims under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the motion, the response thereto, the applicable law, and the

1

entire record, the District's partial motion to dismiss is **GRANTED**.

## I. Background

The facts alleged in the complaint are as follows. On August 23, 2014, D.M. was "committed to the custody" of DYRS and was a resident at YSC, "a secure residential facility for detained males owned and operated by the District of Columbia." Compl., ECF No. 2-1 ¶¶ 7-8. On that day, D.M. was inside the YSC Resource Center "when he was physically assaulted and beaten" by several unnamed DYRS employees. *Id.* ¶ 9. He was "kicked, punched, beaten and placed in a choke-hold" until he lost consciousness and was subsequently dragged by DYRS employees into another room where he was confined. *Id.* ¶ 10. When D.M. regained consciousness, he informed YSC nursing staff that he had been injured, but the nursing staff did not provide immediate medical treatment. *Id.* ¶¶ 11-12. Eventually, D.M. was taken to an off-site hospital, where he was examined and found to have suffered traumatic brain injury, subconjunctival hemorrhaging, and additional injuries to his neck, shoulders, back, face, and teeth. *Id.* ¶¶ 13-14.

Ms. Monk instituted this action in the Superior Court of the District of Columbia by filing a complaint containing six counts: common law assault and battery (Count I); "excessive force" in violation of D.M.'s unspecified civil rights as

protected through 42 U.S.C. § 1983 (Count II); an "unreasonable seizure" in violation of D.M.'s rights under the Fourth Amendment as protected through 42 U.S.C. § 1983 (Count III); common law negligent supervision (Count IV); common law negligent training (Count V); and common law intentional infliction of emotional distress (Count VI). *Id.* ¶¶ 7-42. On September 28, 2015, the District removed the case to this Court, *see* Notice of Removal, ECF No. 1, and soon thereafter moved to dismiss Counts II, III, IV, and V pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Partial Mot. Dismiss, ECF No. 3. That motion is now ripe and ready for the Court's adjudication.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Detailed factual allegations are not required, but the plaintiff is

required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must plead enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The court "must accept as true all of the factual allegations contained in the complaint," *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and must construe the complaint liberally in the plaintiff's favor, granting the plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Only a claim that "states a

plausible claim for relief survives a motion to dismiss." *Id.* at 679.

### III. Analysis

#### A. Municipal Liability Under 42 U.S.C. § 1983

Section 1983 provides a private cause of action against any "person" who, acting under color of state or District of Columbia law, deprives another of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A municipality, such as the District, is a "person" for § 1983 purposes. *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155 (D.D.C. 2015) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). But "municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell*, 436 U.S. at 694). Accordingly, *respondeat superior* does not provide a basis for § 1983 municipal liability. Instead, to state a claim, a plaintiff must allege "not only a violation of his rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation." *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123-24 (1992); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

Thus the § 1983 municipal liability analysis proceeds in two steps: "First, the court must determine whether the complaint states a claim for a predicate constitutional violation. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker*, 326 F.3d at 1306 (citing *Collins*, 503 U.S. at 120; *Monell*, 436 U.S. at 694). Under the first prong, "[a]ll that is being established . . . is that there is some constitutional harm suffered by the plaintiff." *Id.* Under the second prong, a plaintiff can demonstrate that a municipal custom or policy caused the constitutional harm by demonstrating that: (1) "the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren*, 353 F.3d at 39 (quoting *Monell*, 436 U.S. at 694); (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)); or (3) the municipality failed to respond "'to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.'" *Id.* (quoting *Baker*, 326 F.3d at 1306).

Here, the District concedes the existence of a predicate constitutional violation, as it does not dispute that D.M.'s

6

constitutional rights were violated. *See Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 36, 39 (D.D.C. 2010); *cf. Davis v. District of Columbia*, 800 F. Supp. 2d 28, 34 (D.D.C. 2011) (focusing on the second prong of the § 1983 municipal liability analysis because "defendant's motion to dismiss the plaintiff's § 1983 claim focuses on the second element of the two-element test"). Accordingly, the Court's analysis focuses on the second prong in the inquiry: whether Ms. Monk has stated a claim that a District custom or policy caused the predicate violation of D.M.'s constitutional rights. She has not.

### 1. "Explicit Adoption"

Ms. Monk's primary theory of municipal liability is that "the [District] or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren*, 353 F.3d at 39 (quoting *Monell*, 436 U.S. at 694), as the complaint alleges that the District "approved and/or condoned the actions" of the employees who perpetrated the attack on D.M. and thus "any and all liability on the part of Defendant Employees is imputed to all Defendants." Compl. ¶ 20. Ms. Monk's opposition memorandum further alleges that "the authorized agents/policymakers followed the policies and regulations set for . . . DYRS and employed tactics that were not only authorized by DY[R]S, [t]he District and other [a]gencies but the policies originated with the defendants."

Pl.'s Opp. to Def.'s Partial Mot. Dismiss ("Pl.'s Opp."), ECF No. 5 at 6. "But the Court may only consider the facts set forth in the complaint when deciding a motion to dismiss." *Garabis v. Unknown Officers of the Metro. Police*, 820 F. Supp. 2d 32, 36 (D.D.C. 2011).[1] The District counters that "the complaint is devoid of any factual allegation that a final policymaker of the District of Columbia chose to pursue a course of action which led to the alleged deprivations of Plaintiff's constitutional rights." Def.'s Mem. Supp. Partial Mot. Dismiss ("Def.'s Mem. Supp."), ECF No. 3 at 8-9. The Court agrees with the District. Ms. Monk's allegations that the District "approved and/or condoned" the actions of its employees and that "any and all liability on the part of Defendant Employees is imputed to all Defendants," Compl. ¶ 20, "recite legal conclusions, not facts" and, accordingly, fail to state a claim of § 1983 municipal liability. *Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 331 (D.D.C. 2013).

---

[1] Even if the Court could consider this allegation, Ms. Monk would still fail to state a claim, as "merely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011). Even when a plaintiff identifies and names a specific policy or regulation with which District employees allegedly complied when perpetrating a predicate constitutional violation, such an allegation fails to state a claim when no facts are alleged that causally connect that policy or regulation to the predicate violation. *Davis*, 800 F. Supp. 2d at 34. Here, Ms. Monk has neither identified a specific policy or regulation with which DYRS employees complied when violating D.M.'s constitutional rights nor provided facts that would connect that policy or regulation to the violations.

### 2. "Deliberate Indifference"

The only other theory of municipal liability Ms. Monk advances in her complaint is that the District failed to respond "'to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.'" *Warren*, 353 F.3d at 39 (quoting *Baker*, 326 F.3d at 1306). That "deliberate indifference" theory that Ms. Monk advances is grounded in the allegation that the District failed to adequately train and supervise its DYRS employees. Specifically, Ms. Monk alleges that the District "created an unreasonable risk of harm . . . by failing to supervise, control, or otherwise monitor the actions of its DYRS [e]mployees" and "created an unreasonable risk of harm . . . by failing to adequately train its DYRS [e]mployees." Compl. ¶¶ 30, 38.[2]

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*,

---

[2] In Counts II and III—the Counts that contain the § 1983 claims—Ms. Monk does not allege that the District failed to train or supervise its employees. However, Counts IV and V include separate common law claims of negligent supervision and negligent training. Reading the complaint as a whole, the negligent supervision and negligent training claims can broadly be construed as alleging a theory of municipal liability under § 1983. *See Matthews*, 730 F. Supp. 2d at 37; *Fleming v. District of Columbia*, No. 89-220, 1989 WL 207913, at *3 (D.D.C. Oct. 5, 1989).

563 U.S. 51, 61 (2011). In order to satisfy the statute under such a "failure to train" theory, the District's "failure to train its employees . . . must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). District policymakers will be deemed deliberately indifferent when they adopt a "policy of inaction" in the face of "actual or constructive notice that a particular omission in their training program causes [District] employees to violate citizens' constitutional rights." *Id.* The District can "likewise be liable for inadequately supervising its employees if it was deliberately indifferent to an obvious need for greater supervision." *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 34 (D.D.C. 2015). For both failure to train and failure to supervise claims, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Id.* at 34-35 (quotation marks omitted).

   Here, Ms. Monk asserts that the District "is required to supervise the actions of . . . its employees" but "fail[ed] to supervise, control, or otherwise monitor" them and that the District "is required to adequately train its officers" but "fail[ed] to adequately train" them. Compl. ¶¶ 27, 30, 37-38. These allegations fail to state a claim of municipal liability

10

under a "failure to train" or "failure to supervise" theory of "deliberate indifference" because they lack factual support. Ms. Monk "has not identified any 'particular omission' in the District's training [or supervision] programs that led to a violation of [D.M.'s] rights." *Jackson v. District of Columbia*, No. 15-145, 2016 WL 1254217, at *5 (D.D.C. Mar. 29, 2016) (quotation marks omitted). "'Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training [or supervision] program that will cause violations of constitutional rights.'" *Id.* (quoting *Connick*, 563 U.S. at 62); *see also Bell*, 82 F. Supp. 3d at 158 ("The complete absence of any factual allegations concerning a specific shortcoming in training forecloses any plausible inference of 'actual or constructive knowledge' by District policymakers that its officers will 'probably violate constitutional rights.'") (quoting *Warren*, 353 F.3d at 39); *Costello v. District of Columbia*, 826 F. Supp. 2d 221, 225-26 (D.D.C. 2011) ("While the plaintiffs have alleged in conclusory terms that the District failed to train its officers regarding the lawful execution of search warrants, they have pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training of its police officers concerning the execution of search warrants such that the District could be

11

deemed 'deliberately indifferent' towards citizens' constitutional rights.") (citations omitted). Without any specific factual support for the allegation of a failure to train and supervise, the Court cannot infer that the District had knowledge of the risk that constitutional rights would be violated.

Ms. Monk advances another version of a "deliberate indifference" theory in her opposition memorandum when she alleges that "District policymakers had actual and constructive knowledge of widespread patterns of assaults on residents at YSC, and openly adopted a policy of inaction. Specifically the complaint states that nursing staff from YSC knew that D.M. was injured and did not immediately attend to his medical needs." Pl.'s Opp. at 6. Again, the Court cannot consider these allegations not set forth in the complaint. *Garabis*, 820 F. Supp. 2d at 36.[3] Accordingly, because Ms. Monk has failed to

---

[3] Even if it could, Ms. Monk's allegation that there have been "widespread patterns of assaults on residents at YSC" does not permit the Court to infer that the District could have been aware of a risk of constitutional violations but ignored that risk. She does not provide any factual details about assaults perpetrated at YSC other than the one at issue in this case to support the allegation that there have been "widespread patterns of assaults" at YSC. Instead, her only factual support is that the "nursing staff from YSC knew that D.M. was injured and did not immediately attend to his medical needs." But "'[p]roof of a single incident of unconstitutional activity . . . is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy.'" *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 12 (D.D.C. 2015) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 841 (1985)). To the extent that the attack itself and the failure to provide immediate medical attention can be disaggregated into two separate incidents, such "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the [District] and the opportunity to

state a claim that a District custom or policy caused the predicate constitutional violations, the Court must grant the District's motion to dismiss as to the § 1983 claims.

### B. Negligent Training and Supervision

Ms. Monk also has alleged claims of common law negligent supervision and negligent training against the District. As concerns the negligent supervision claim, the complaint asserts that the District is "required to supervise the actions of its . . . employees," Compl. ¶ 27, and that it "created an unreasonable risk of harm . . . by failing to supervise, control, or otherwise monitor the actions" of its employees, *id.* ¶ 30, and "[a]s a direct and proximate result" of that negligent supervision D.M. suffered injury. *Id.* ¶ 31. As concerns the negligent training claim, the complaint asserts that the District "is required to adequately train its officers," *id.* ¶

---

conform to constitutional dictates." *Connick*, 563 U.S. at 63 n.7 (quotation marks omitted). Instead, the District is only deemed aware of a risk of constitutional violations based on a pattern of activity when a plaintiff alleges facts demonstrating that the pattern was brought to the District's attention, *see, e.g.*, *McComb v. Ross*, No. 14-157, 2016 WL 4275587, at *4 (D.D.C. Aug. 12, 2016) (officers whose conduct was at issue "were named in eleven previous complaints for similar unlawful conduct"); *Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 (D.D.C. 2012) (harassing conduct involving specific officers reported on five separate occasions); *Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008) (officer whose conduct was at issue had been the subject of at least thirteen citizens' complaints), or when a plaintiff alleges facts demonstrating that the unconstitutional conduct was so pervasive that the District had to be on notice of it. *See, e.g.*, *Matthews*, 730 F. Supp. 2d at 37-38 (allegation that "five different individuals were subjected to invasive public strip searches by numerous MPD officers on six different occasions and in six different locations in 2006 and 2007"). Accordingly, Ms. Monk's generalized allegation of "widespread patterns of assaults" does not permit the Court to infer that the District was on notice of the risk of constitutional violations at YSC.

37, and that it "created an unreasonable risk of harm . . . by failing to adequately train" them. *Id.* ¶ 38.

To establish a claim of negligent training or negligent supervision, "a plaintiff must 'show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" *Harvey v. Kasco*, 109 F. Supp. 3d 173, 179 (D.D.C. 2015) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010)). Here, Ms. Monk has not supported the allegations of negligent training and supervision with factual support suggesting that the District had actual or constructive knowledge that DYRS employees used excessive force with detainees. *See Blakeney*, 117 F. Supp. 3d at 21 (dismissing negligent training and supervision claim because plaintiff failed to allege "any facts to support the inference that the District had knowledge of MPD officers' tendency to use excessive force"); *Harvey*, 109 F. Supp. 3d at 179 (dismissing negligent training and supervision claim because plaintiff failed to plead "any facts regarding the [District's] knowledge that one of its officers would allegedly use excessive force in effectuating an unjustified arrest in a single incident, or that other officers would fail to intercede"). Without that factual support, the Court cannot infer that the District knew or should

14

have known of dangerous or otherwise incompetent employee behavior. Accordingly, the Court must grant the District's motion to dismiss as to the negligent training and supervision claims.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** the District's partial motion to dismiss. The § 1983 claims and the negligent training and negligent supervision claims against the District are hereby dismissed without prejudice. The remaining claims are Count I against all defendants; Count II against all defendants except the District; Count III against all defendants except the District; and Count VI against all defendants. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**           United States District Judge**
**           September 26, 2016**